UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**UNITED STATES OF AMERICA,**

*Plaintiff*,

v.                                                                        Case No. SA-21-CR-00409-JKP

**(1) DAWN M. SHEFFIELD,**

*Defendant*.

# O R D E R

Before the Court is Dawn Sheffield's appeal from her conviction and sentence in in *USA v. Sheffield, 5:19-MJ-1450-ESC-1* pursuant to Rule 58(g)(2)(B) of the Federal Rules of Criminal Procedure. *ECF Nos.* 7, 9. The United States filed a response brief. *ECF No. 8*. With briefing complete, the Court heard oral arguments on June 14, 2022. Upon consideration, the Court affirms the conviction and sentence and concludes the funds taken by Sheffield are property belonging to the United States under 18 U.S.C. § 641.

## Standard of Review

A defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge. Fed. R. Crim. P. 58(g)(2)(B). "The defendant is not entitled to a trial *de novo* by a district judge. The scope of the appeal is the same as in appeal to the court of appeals from a judgment entered by a district judge." *Id*. at 58(g)(2)(D). The Federal Rules of Appellate Procedure govern an appeal from a district judge's order or a judgment of conviction or sentence. *Id*. at 58(g)(1). A magistrate judge's ruling should be upheld if there is any reasonable view of the evidence to support it. *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014). In the interest

of comprehensive review, the Court conducted a *de novo* review and affirms Magistrate Judge Chestney's judgment of conviction and sentencing.

## Facts

Magistrate Judge Chestney found the following stipulated facts. Defendant, Dawn Sheffield, worked as a Field Studies Program Manager for Air Force Security Assistance and Training (AFSAT) at Randolph Air Force Base from January 2013 until March 2020. *USA v. Sheffield, 5:19-MJ-1450-ESC-1, ECF No. 57, p. 1*. AFSAT is the military department/defense agency responsible for executing military training and assistance programs. *Id.* Sheffield was employed by AFSAT at the Joint Base San Antonio office in its' International Military Student Office (IMSO). *Id.*

Sheffield found a debit card in an office located in San Antonio, Texas. *Id.* This debit card was issued by Metabank. and was issued to an International Military Student from Saudi Arabia who did not appear for his scheduled training orders in March of 2018. *Id. at p. 2*. The student's training, and the funds issued to pay for such, were funded by Foreign Military Sales (FMS), pursuant to the Letter of Offer & Acceptance with Saudi Arabia. *Id.*

Between July 4, 2019 and July 14, 2019, Sheffield, used the debit card to obtain funds totaling $1,370.80 in San Antonio, Texas and withdrew an additional $1,479.20 from other locations in Paris, France and Washington State. *Id.* The parties agree the correct amount for restitution is $2,850, the total amount of funds received by Sheffield using the debit card. *Id.*

## Analysis

In this appeal, Sheffield challenges Magistrate Judge Chestney's conclusion that the debit card funds are property belonging to the United States. *ECF No. 7, p. 1*. Therefore, the sole issue before the Court is whether the debit card issued for the Saudi Arabia student who did not show

up and its preloaded funds qualify as property belonging to the United States under 18 U.S.C. § 641.

In the Fifth Circuit, the key factor in deciding whether funds belong to the United States under Section 641 is "the supervision and control contemplated and manifested on the part of the government." *United States v. Smith*, 596 F.2d 662, 664 (5th Cir. 1979). When funds appropriated for use in federal programs are in transit between the federal government and their intended recipient, they maintain their federal character if they are still subject to "substantial federal controls." *Id.*

Magistrate Judge Chestney found the funds taken from the debit card by Sheffield were funds belonging to the United States because the preloaded funds remained under the supervision and control of the government until used by Sheffield. *ECF No. 8, p. 6*. The funds were loaded to the debit card by a federal agency (AFSAT) from a United States Treasury account. *Id. at p. 5*. According to protocol, the unused funds in the debit card were to be returned to the United States account if not used. *Id. at p. 2*. The debit card and the preloaded funds remained in possession of a government agency and were subject to the actual control of Sheffield, a federal employee. *Id. at p. 6*. The reconciliation review conducted by another AFSAT employee further demonstrates the government exercised continued control over the debit card and the funds in it prior to distribution to the students. *Id. at p. 3*.

Sheffield first argued that since Saudi Arabia provided the funds and had the ultimate control of them, the funds did not belong to the United States, but instead, belonged to Saudi Arabia. *ECF No. 7, p. 5-6*. However, the United States plays a critical role in FMS training. The fact that Saudi Arabia had ultimate control over the funds does not obviate the United States' substantial control over the same funds as a bailee. The United States continued to exercise a

considerable amount of supervision and control over the funds after it received them from Saudi Arabia and before it disbursed them for the benefit of the student. *See ECF No. 8.*

During oral argument, Sheffield argued the United States released control over the funds when it loaded them to the Metabank debit card. Citing *Smith*, Sheffield argued the private party, in this case, is Metabank. Therefore, the funds were transferred to private hands and lost their federal character the moment Metabank issued the debit card. However, Sheffield misapplies *Smith*. In *Smith*, the defendants were employees of a college who stole federal work-study funds in a special bank account maintained by the college at South Oak Cliff State Bank. *See Smith*, 596 F.2d at 664. The Fifth Circuit held the funds were the federal government's property until they were distributed to the "end recipient" so long as they were subject to substantial federal controls. *Id.* Because the "end recipient" in *Smith* was the college students, not the South Oak Cliff State Bank, and the funds had not passed into the hands of the college students, the Court concluded the stolen funds were federal property. *Id.*

Like the South Oak Cliff State Bank in *Smith*, Metabank is not the "end recipient" of the funds in the present case. Metabank is not free to use the funds or disburse the funds to persons other than the international military student for whom the funds are intended. The "end recipient" is the international military student who would have unrestricted use of the debit card upon receiving it. Because the debit card was never transferred to the possession of the international student, just like the funds stolen from the special work-study accounts were never distributed to the college students in *Smith*, the United States did not release its control over the debit card and the funds in it. *See Smith*, 596 F.2d at 663.

Sheffield also contends that because Metabank takes a $5 monthly commission for the debit card, the United States' duty as a bailee was fully exercised when the funds were loaded

into the debit card. However, not only did Sheffield fail to explain why the alleged commissions were never deducted from the debit card, such fact, even taken as true, is not sufficient to establish the United States released control of the funds once they were loaded onto the debit card.

Finally, Sheffield argues the United States does not have a reversionary interest in the funds. *ECF No. 7, p. 5*. However, as noted, the controlling rule for deciding whether certain funds belong to the United States under Section 641 is "the supervision and control contemplated and manifested on the part of the government." *Smith*, 596 F.2d at 664. Sheffield fails to present any binding authority that recognizes the reversionary interest as a controlling factor of the inquiry.

## Conclusion

For the reasons stated, the Court AFFIRMS Magistrate Judge Chestney's judgment of conviction and sentence in *USA v. Sheffield, 5:19-MJ-1450-ESC-1*.

SIGNED this 24th day of June, 2022.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE